Edward Robinson, Jr., J.
This action was tried before me at Special Term, Part III, without a jury on February 18, 1966. Plaintiff, by its complaint, alleges that it is an unincorporated association. It alleges that as such an association the Board of Education of Union Free School District No. 3, County of Nassau, State of New York, did grant to it a permit to use the auditorium of the W. Tresper Clarke High School which is located in East Meadow under the jurisdiction of the Board of Education of such Union Free School District, on March 12, 1966, for the purpose of presenting a musical concert. It is alleged that the permit was issued on the 17th day of June, 1965. It further alleges that in reliance upon said permit, the plaintiff entered into a written contract with Columbia Artists Management, Inc., whereby plaintiff agreed to pay a valuable consideration, to wit, the sum of $7,500 for 3 concerts, to wit: the Andre Eglevsky Ballet Company on November 20, 1965, Nathan Milstein on December 4, 1965 and Pete Seeger on March 12, 1966 j the circulars and tickets were ordered and printed reflecting the appearance of the various artists and arrangements made for reciprocity with 12 similar community concert associations located in the Long Island area, all on the basis of the permit allegedly issued. It is then alleged that on or about December 1, 1965 the defendant Board of Education notified the plaintiff by letter that the permit to present the Pete Seeger concert on March 12, 1966 had been revoked. The complaint then alleges that the plaintiff had agreed to pay $100 for the use of the auditorium on March 12, 1966; that it has no adequate remedy at law for the reason that it has obligated itself contractually to the artist involved, to 1,000 subscribers, and by reciprocity to the subscribers of 12 similar community concert associations. It is alleged that 2 of the 3 concerts scheduled under the permit had already been presented at the time the action was commenced and that unless the third concert were allowed to be presented the association will suffer irreparable harm, damage and injury. The complaint seeks an injunction restraining the Board of Education from interfering, actively or passively, with the presentation by the *645 plaintiff of the musical concert scheduled for March 12, 1966 at the W. Tresper Clarke High School. A motion for a temporary injunction was denied by order of this court dated January 19, 1966. The plaintiff then moved fdr a preference and the case was placed upon the calendar for February 17, 1966, and as aforesaid, the trial was had on February 18, 1966.
At the opening of the trial, the complaint was amended by consent to allege in addition to the allegations contained in the original complaint, that the revocation of the permit by the Board of Education was in violation of section 6 of article I (due process), section 8 of article I (freedom of speech), section 9 of article I (freedom of assembly) and section 11 of article I (equal protection of the laws) of the Hew York State Constitution, as well as Amendment I (freedom of speech and freedom of assembly), Amendment V (due process) and Amendment XIV (due process and equal protection) of the Constitution of the United States of America. It further alleged that article VI (§ A, par. 14) of the Administrative Code of the East Meadow Schools which provides in substance that the Board of Education reserves the right to revoke any permit granted to an organization when in the best interests of the school district it deems it necessary to do so, as applied to this action, is vague, indefinite, imprecise and uncertain of definition, and therefore violative of plaintiff’s constitutional rights; that the defendant has reserved a right to review and approve or disapprove any and all programs sought to be offered by any organization or group on school district property, thus constituting itself and arrogating unto itself a right to sit as a board of censors, all in violation of plaintiff’s constitutional rights; that the defendant’s attempted revocation of the permit was not made pursuant to vote taken at an open regular meeting of the Board of Education, thus violating the requirements of subdivision 3 of section 1708 of the Education Law; that the actions of defendant, as herein-above complained of, were arbitrary, capricious and without just cause.
The prayer for relief contained in the complaint was also amended so as to demand judgment directing the defendant Board of Education to permit the presentation by the plaintiff of its musical concert by Pete Seeger on March 12, 1966; that the attempted revocation by the defendant of the permit previously granted is null and void and without legal effect and therefore reinstating the permission heretofore granted, and for such other and further relief as to the court may seem just and proper.
*646 I find from the evidence adduced upon the trial that: The Board of Education of Union Free School District No. 3 has adopted pursuant to section 414 of the Education Law, regulations for the use of the schoolhouses and other property of the school district within the district. From an examination of the regulations the court finds that they do not conflict with any of the provisions of the Education Law and fully conform to the purposes and intent of section 414 thereof. The regulations provide that all requests for the use of school facilities must be made in writing only to the Business Manager’s office, not less than 15 days prior to the desired date. Pursuant to the regulations it is provided that the Business Manager shall have no authority to grant special privileges. By Regulation No. 14 of article VI of the regulations “ The Board of Education reserves the right to show cause and revoke any permission granted to an organization when in the best interests of the school district it deems it necessary to do so.” By letter dated June 15, 1965 the plaintiff association through its president Norman Novak wrote to the Business Manager of the School District, Mr. Mortimer Pearlstone, to the effect that the East Meadow Community Concerts Association in conjunction with New York State Council on the Arts had scheduled concerts for presentation in East Meadow on November 13, 1965, December 4, 1965 and March 12, 1966, and requested that they be advised as soon as possible if the auditorium of the W. Tresper Clarke High School would be available on those dates. The letter specified that the November 20, 1965 date would be for Andre Eglevsky Ballet with Hayden and Prokovsky, that the engagement for December 4 would be for Nathan Milstein and that the engagement for March 12, 1966 would be for Pete Seeger. By letter dated June 2, 1965, 13 days before the application to the Business Manager, Mr. Novak, the alleged president of the plaintiff association, had received notice from the New York State Council on the Arts that council support would be given to the total sum of $1,000. It is noted from this letter that the State Council only gives support for the performance of the Andre Eglevsky Ballet with Hayden and Prokovsky on October 16, 1965. There is no proof that the State Council had approved either of the other proposed concerts. On June 17, 1965 Mortimer Pearlstone as Business Manager of the School District wrote to Norman Novak, the plaintiff’s alleged president, stating that the auditorium in the W. Tresper Clarke High School had been reserved for the use of the association on December 4, 1965 and March 12, 1966. The letter pointed out that a Senior play *647 was scheduled on November 12 and 13 and that the requested reservation for November 13 could not be filled. The letter offered the use of the auditorium on November 20 as an alternative date. There was no discussion with the Business Manager and no writing with the Business Manager with reference to the type of an artist that Peter Seeger was. The schedule of concerts and the permission to use the auditorium were not referred by the Business Manager to the Board of Education. At the time that the application for the auditorium was made by the letter of June 15,1965, Mr. Novak was entirely familiar with the rules and regulations of the School District and with the fact that the Board of Education had reserved the right to revoke or cancel any reservation which had been made, and acted upon his peril in making arrangements for the concert without obtaining a formal resolution of the Board of Education and without calling to their attention that the artist for March 12 was a controversial figure.
Under the regulations adopted by the School Board, written requests for the use of the school property are not brought to the attention of either the Superintendent of Schools or the Board of Education itself. This is reasonable in that the School District contains 18,000 students, and the running thereof is, in effect, a vast business. The budget in the district amounts to approximately $15,000,000. Under these circumstances the General Business Manager, working under the Superintendent of Schools, kept a schedule in a date diary for the various scheduled uses of the school property. The scheduled use of the hall for the Pete Seeger concert March 12, 1966 did not actually come to the attention of the Superintendent of Schools or to any member of the board until the latter part of October, 1965 or the early part of November, 1965 at which time one of the staff members called the Superintendent’s attention to the brochure put out by the East Meadow Community Concerts Association, showing the scheduled concert of Pete Seeger at East Meadow; together with the brochure there was presented a clipping from the Neiv Yorh Times dated Monday, November 25, 1965 containing the picture of the artist Pete Seeger and a news article dated in Moscow October 24, 1965 announcing that an American folk singer, Pete Seeger, sang a Viet Nam protest ballad that day before an auditorium filled with Moscow University students, and had issued the statement ‘ ‘ I wanted to show students here the kind of songs we’re singing on college campuses in the United States. It would be wrong to leave this one out ”, At approximately the time that this was called *648 to the attention of the Superintendent, large demonstrations both in favor of and against the Viet Nam situation had been held and were being held at Hempstead and other localities in the vicinity of East Meadow. The Superintendent of Schools having received this word then conferred with the Business Manager and decided that the matter was one of importance that should be taken up with the Board of Education. Accordingly, on November 16, 1965 which was the first business meeting of the board held thereafter, the matter was called to the attention of the Board of Education and a committee was appointed to check into the matter. On November 19, 1965, plaintiff’s president Novak was notified in a telephone conversation by the President of the Board of Education that a letter of protest had been received in connection with the March 12, 1966 concert and on November 22, 1965 a conference was held with Novak where the matter was thoroughly discussed and Novak produced data as to the appearance of the artist before a Congressional Committee and other information. All of this matter pointed to the fact that the artist was at least controversial. On November 23, 1965 the board met in executive session and unanimously decided that it was for the best interest of the School District and its property that the permission granted by the Business Manager be cancelled. The plaintiff was notified that the program for March 12, 1966 was disapproved but that a substitute program might be offered.
On all of the evidence judgment is directed dismissing the plaintiff’s complaint, with costs. School buildings are not public places in the sense that use thereof may be demanded as a matter of right by any individual or organization as a forum for public or private discussions. (Matter of Ellis v. Allen, 4 A D 2d 343.) By section 414 of the Education Law the Board of Education is charged with the-duty of managing and caring for the property of the School District and may in its discretion allow the use of school buildings for concert purposes and may adopt rules and regulations in connection therewith. Plaintiff had no right to the use of the school building unless granted by the Board of Education under its rules. The only right which plaintiff secured by the letter of June 17,1965 from the Business Manager was a permit which was subject to being revoked at any time that cause came to the attention of the board that it would be in the interest of the School District to cancel it. The plaintiff knew this to be a fact and acted at its peril knowing that the board might, and possibly would, cancel the permit. No discrimination has been shown by the evidence in dealing with *649 plaintiff, as it has been afforded the use of the school property for many years. No constitutional rights of anyone have been violated. If the plaintiff feels that it had a valid contract and that there was a breach thereof, it has its remedy at law.